

Clay A. Young
Delaney, Wiles, Hayes,
Gerety, Ellis & Young, Inc.
1007 W. 3rd Ave., Ste. 400
Anchorage, AK  99501
907-279-3581
907-277-1331 fax

Attorneys for Travelers Indemnity
Company of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| AMERICAN CIVIL CONSTRUCTORS WEST COAST, INC. and MRC HOLDINGS, INC. f/k/a HURLEN CONSTRUCTION COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. A05-153 CV (JWS) |
| ZURICH AMERICAN INSURANCE COMPANY and TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) ) | **OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | ) ) ) ) | **AND** **CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Travelers Indemnity Company of America ("Travelers"), by and through counsel, files this opposition to the motion for partial summary judgment filed by plaintiff American Civil Constructors West Coast, Inc. and MRC Holdings, Inc. f/k/a Hurlen Construction Company ("Hurlen").  Travelers also cross-moves for partial summary judgment on the ground that it had no duty to defend or indemnify Hurlen.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

31

### FACTUAL AND PROCEDURAL BACKGROUND

In January 2001, the City of Homer issued for bid the Kachemak Bay Multi-Purpose Ocean Dock Project. Exh. 6 at 1 (attached to Motion for Partial Summary Judgment). The project included, among other things, the construction of a new concrete and steel dock. *Id.* The dock required steel pilings that were to be coated to protect the piles from corrosion from the ocean. Exh. 6 at 6 (Attached to Motion for Partial Summary Judgment). Homer awarded the contract to Hurlen. Exh. 2 at 1-2 (attached to Motion for Partial Summary Judgment). The contract included the City of Homer Standard Construction Specifications, which defined "subcontractor" as:

> Any individual, firm or corporation, partnership or joint venture acting for or on behalf of the Contractor in the performance of a part of the contract. <u>This does not include those working for hire or suppliers of material or equipment</u> except that production of materials or supplies at the project site shall be deemed as being produced by a subcontractor where such is not produced by the Contractor's own forces and equipment.

Exh. 11 at 3 (City of Homer Standard Construction Specifications) (attached to Motion for Partial Summary Judgment) (emphasis added). Hurlen hired a variety of subcontractors to assist it with the building of the Homer dock. Exh. A at 1 (Subcontractor

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

2

List).

Hurlen also entered into a supply contract with Theriault Industries, Inc. ("Theriault"). Exh. 12 at 1-15 (Supply Agreement) (attached to Motion for Partial Summary Judgment). The Supply Agreement between Hurlen and Theriault Industries was titled "Supply Agreement" and referred to Theriault as a "Supplier". *Id.* at 1. The Supply Agreement required Theriault to complete "[o]ffsite fabrication of 30-inch diameter steel pipe piles complete with end plates and cleats, and off-site fabrication of 24-inch diameter fender piles." *Id.* Theriault was also required to coat the piles with Devoe epoxy coating. *Id.* at 3. After Theriault, which is located in Bothell, Washington, had the piles fabricated and coated at its off-site location, the piles were delivered to the construction site at the Homer Dock. *Id.* at 4, 6. Theriault did not fabricate, coat or perform any work at the Homer Dock on the piles. As a supplier, Theriault was required to procure and maintain its own comprehensive general liability insurance. *Id.* at 2.

In July 2003, Hurlen filed a breach of contract action against the City of Homer in Alaska Superior Court. Exh. 15 at 1-15 (Complaint) (Attached to Motion for Partial Summary Judgment). Hurlen claims that Homer breached the contract by

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

3

failing to disclose that the ground in which the pilings for the dock were driven into was harder than Homer had stated. *Id.* at 7. Hurlen claimed that because the ground was different than anticipated, the coating on some of the piles was damaged when the piles were driven into the ground. *Id.* Homer filed a counter claim against Hurlen on the grounds that Hurlen had improperly coated the pilings supporting the dock. Exh. 16 at 7 (Counter Claim and Answer).

On March 7, 2005, Hurlen notified Travelers of the claim. Exh. 19 (attached to Motion for Partial Summary Judgment). The Policy Travelers issued Hurlen covers certain property damage in limited circumstances when there has been an occurrence:

### SECTION 1 – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

4

"occurrence" and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage's A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

Exh. 4 at 2 (attached to Motion for Partial Summary Judgment) (emphasis added).

The Policy has various exclusions which limited the circumstances in which Travelers had a duty to defend. Exclusion a states:

This insurance does not apply to:

a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

Exh. 4 at 2.

Exclusion h provides that the Policy does not apply to "Damage to Property":

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

5

h.   Damage to Property

"Property Damage" to:

(1)   Property you own, rent, or occupy;

(2)   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)   Tools or equipment loaned to you;

(4)   Property on the premises of the insured for the purpose of having operations performed on it by any insured or on behalf of any insured;

(5)   Property in the custody of the insured which is to be installed, erected or used in construction by any insured or on behalf of any insured;

(6)   That particular part of any property:

(a)   On which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(b)   That must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

6

> Paragraphs (3), (4), (5)and (6)of this exclusion do not apply to liability assumed under a sidetrack agreement.
>
> Paragraph (6)(b) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*Id*. at 4.

Exclusion i provides that the Policy does not apply to "Damage to Your Product":

> i.   Damage to Your Product
>      "Property Damage" to "your product" arising out of it or any part of it.

*Id*. at 4.

Exclusion j provides that the Policy does not apply to "Damage to Your Work":

> j.   Damage to Your Work
>      "Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on you behalf by a subcontractor.

*Id*. at 5.

Exclusion k provides that the Policy does not apply to "Damage to Impaired Property or Property Not Physically Injured":

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

7

k.  Damage to Impaired Property or Property Not Physically Injured

"Property damage" to impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*Id.* at 5.

Under the Policy, "property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 14.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

8

The Policy defined "Products-completed operations":

    a.    Includes  all  .  .  .  "property  damage"
occurring  away  from  the  premises  you  own  or
rent  and  arising  out  of  "your  product"  or
"your work" except:

    (1)  Products  that  are  still  in  your
physical  possession;  or  abandoned.    However,
"your  work"  will  be  deemed  completed  at  the
earliest of the following times:

    (a)  When  all  of  the  work  called  in
        you  contract  has  been
        completed.

    (b)  When  all  of  the  work  to  be
        done  at  the  job  site  had  been
        completed  if  your  contract
        calls  for  work  at  more  than
        one job site.

    (c)  When  that  part  of  the  work
        done  at  a  job  site  has  been
        put  to  its  intended  use  by  any
        person  or  organization  other
        than  another  contractor  or
        subcontractor  working  on  the
        same project.

*Id.* at 14-15.

The Policy defined "your product":

    a.    Any  goods  or  products,  other  than  real
property,    manufactured,    sold,    handled,
distributed or disposed or by:

    (1)  You;
    (2)  Others trading under your name; or
    (3)  A  person  or  organization  whose
        business  or  assets  you
        have acquired[.]

**DELANEY, WILES,**
**HAYES, GERETY,**
**ELLIS & YOUNG, INC.**
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

9

*Id.* at 15.

The Policy defined "your work":

> a.    Work or operations performed by you or on your behalf; and
>
> b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

> a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
> b.    The providing or failing to provide warnings or instructions.

*Id.* at 15.

An "occurrence" "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 14.

Travelers investigated the claim and concluded that Travelers was not required to defend or indemnify Hurlen under the facts known to the parties and the terms of the Policy. Exh. 23 (attached to Motion for Partial Summary Judgment).

Hurlen then filed this action against Travelers seeking declaratory relief and monetary damages.[1]    Complaint at 1-4.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

_____

[1]    Hurlen has also sued Zurich American Insurance Company ("Zurich"), claiming that Zurich also breached its duty to defend and indemnify it under the terms of Zurich's policy.    Complaint

10

Hurlen claims that Travelers has a duty to defend and indemnify it under the Policy. *Id.* Travelers disputes Hurlen's claims. Answer at 1-5.

Presently before the Court is Hurlen's motion for partial summary judgment. *See* Motion for Partial Summary Judgment at 1-22. Hurlen reasons that it is entitled to partial summary judgment because the Policy did not exclude property damage to work performed on Hurlen's behalf by a subcontractor, Theriault was subcontractor who caused property damage, and therefore Travelers is required to defend and indemnify Hurlen under the terms of the Policy. *Id.* at 2-3, 9-22. Travelers opposes Hurlen's motion for partial summary judgment for the reasons set forth below. In brief, Hurlen's sole argument in support of summary judgment—that Theriault was a subcontractor is factually and legally incorrect. Travelers has cross-moved for partial summary judgment on the grounds that Travelers had no duty to defend or indemnify Hurlen under the terms of the Policy under these circumstances.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

at 1-4. Hurlen has not moved for summary judgment against Zurich.

11

## ARGUMENT

### I.    Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Courts will construe all evidence and draw all evidentiary inferences in favor of the non-moving party. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727, at 459, 459 n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

12

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *Provenz v. Miller,* 102 F.3d 1478, 1489-90 (9th Cir. 1996); *Angel v. Seattle-First Nat'l Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

## II.  Because Theriault Was Not A Subcontractor, Travelers Has No Duty To Defend Or Indemnify Hurlen

Hurlen has moved for summary judgment against Travelers on the ground that the Policy did not exclude coverage for work performed by a subcontractor and Theriault was a subcontractor and not a supplier, therefore any property damage to the pilings from the allegedly improper coating of the pilings was covered by the Policy. *See* Motion for Partial Summary Judgment at 9-20. In support of its argument that Theriault was a subcontractor, Hurlen picks and chooses certain definitions of subcontractor that some courts around the country have come up with. *Id.* In

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

13

the absence of "subcontractor" being defined by the parties to the Policy or the contract, and not having any relevant extrinsic evidence, this approach might assist the Court in determining whether Theriault was a supplier or a subcontractor for purposes of the work performed on the Homer Dock project. But, it is not necessary to countenance Hurlen's suggestion that this Court judicially create or craft a definition of subcontractor, when the parties themselves already created a definition of subcontractor in the underlying construction contract. *See Complaint of Midwest Equipment Leasing Corp.*, 703 F. Supp. 727, 729-30 (N.D. Ill. 1988) ("The court finds that the language used in the contract is ambiguous. Specifically, who was intended to be covered under the umbrella term "subcontractor" is not clear. In this respect, parol evidence may be used to establish the intent of the parties."); *Dugan v. Atlanta Cas. Companies*, 113 P.3d 652, 654 (Alaska 2005) (explaining that when an insurance policy does not define a particular term, courts should consider relevant extrinsic evidence to determine the particular definition of a term).

As previously explained, the contract between Hurlen and Homer defined "subcontractor" as:

> Any individual, firm or corporation, partnership or joint venture acting for or on

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

14

> behalf of the Contractor in the performance
> of a part of the contract.  This does not
> include those working for hire or suppliers
> of  material  or  equipment  except  that
> production of materials or supplies at the
> project  site  shall  be  deemed  as  being
> produced by a subcontractor where such is not
> produced by the Contractor's own forces and
> equipment.

Exh. 11 at 3 (attached to Motion for Partial Summary Judgment)

(emphasis added).   Theriault does not meet the definition of a

subcontractor  under  the  definition  Hurlen  agreed  to  in  the

contract  because  it  is  undisputed  that  all  Theriault  did  was

supply material or equipment (i.e., coated piles) and Theriault

did not engage in "production of materials or supplies at the

project site (i.e., Theriault did not engage in coating the piles

at the Homer Dock, rather it coated the piles off-site in another

state).

Review of other extrinsic evidence confirms that Theriault's

work on the Homer Dock project was as a supplier and not a

subcontractor.    For   example,   Hurlen   hired   a   variety   of

subcontractors to assist it with the building of the Homer dock

and referred to these entities as "Subcontractors."   Exh. A at 1

(Contractor/Subcontractor List).   Theriault was not listed as a

subcontractor on the Contractor/Subcontractor List.   See id.

Similarly, when Hurlen notified the State of Alaska about who was

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

15

working on the Homer Dock project for purposes of disadvantaged business enterprise participation, it listed a variety of subcontractors (i.e., North Star Paving, Midnight Sun Services, Inc., etc.) as subcontractors, and expressly did not include Theriault as a subcontractor. Exh. B (State of Alaska Federal Aid Contract Summary).

Also, the contract between Homer and Hurlen required various conditions and numerous terms to be included in any agreement Hurlen entered into with a subcontractor, but did not explicitly require such exacting terms for suppliers. *See, e.g.*, Exh. C (Required Subcontract Paperwork); Exh. D (Subcontract Change Order). The subcontractor agreements Hurlen had with the subcontractors are titled "Subcontract Agreement" and the contracting entity is referred to as a "subcontractor". *See, e.g.*, Exh. E at 2 ("Subcontract Agreement" between Hurlen and Dunkin & Bush). This sharply contrasts with the agreement Hurlen had with Theriault that is titled "Supply Agreement" and refers to Theriault as a "supplier". Exh. F at 1 ("Supply Agreement" between Hurlen and Theriault).[2]

---

[2]  Grant Pool, the project manager for Hurlen at the beginning of the Homer Dock project, explained that Hurlen drafted the supply agreement and could have had Theriault sign a subcontractor agreement. Exh. G at Tr. 8, 57-58, 130 (Grant Pool Deposition). But, there were significant economic reasons why Hurlen did not

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

16

In sum, the extrinsic evidence conclusively demonstrates that Theriault was a supplier and not a subcontractor when it worked on the Homer Dock project.  Since Hurlen is seeking coverage for property damage allegedly committed by a subcontractor's work on the Homer Dock project under the Travelers' policy, and the extrinsic evidence reveals that Theriault was a supplier and not a subcontractor, Travelers was justified in declining to defend or indemnify Hurlen.  The Court should therefore deny Hurlen's motion for partial summary judgment and grant Travelers' motion for summary judgment.

III. **Case Law And Statutes Do Not Establish That Theriault Was A Subcontractor Or That Travelers Breached Its Duty to Defend Hurlen**

Assuming *arguendo* that the extrinsic evidence surrounding the Homer Dock project does not resolve the issue of whether Theriault was a supplier and not a subcontractor and Travelers therefore had no duty to defend or indemnify Hurlen, case law and

characterize Theriault as a subcontractor—it saved Hurlen money (i.e., did not have to pay Davis Bacon wage rates, did not have to do certified payroll reporting, did not have certain other insurance requirements, etc.).  *Id.* at Tr. 43-46.  The various legal requirements that attached to a subcontractor designation would not apply to a party doing work off-site.  *Id.* at Tr. 46, 56.  Pool agreed that based on the definition of subcontractor in the contract between Homer and Hurlen, Theriault was not a subcontractor.  *Id.* at Tr. 57-59.  Pool also agreed that Theriault did not supply material or equipment at the project site.  *Id.* at Tr. 61.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

17

statutes in Alaska and other jurisdictions do not establish that Travelers breached its duty to defend or indemnify Hurlen.

**A.    Alaska Cases**

There are only a few Alaska cases that address the "your work" exclusion to broad form property damage coverage in any detail. The first two cases involved liability policies issued to contractors who built and sold homes with foundation and soil problems. In *U.S. Fire Insurance Co. v. Colver,* 600 P.2d 1 (Alaska 1979), the Alaska Supreme Court reversed a grant of summary judgment against the insurer in a declaratory judgment action. *Id.* at 2. The court declared that a coverage exclusion applicable to damages arising out of work performed by the insured was not ambiguous and thus the policy did not cover defects or damage to the house that was caused by the insured's negligence in constructing the house. *Id.* at 3.

The "your work" exclusion came up again in *Alaska Pacific Insurance Co. v. Collins,* 794 P.2d 936 (Alaska 1990), which involved another house with soil problems resulting from settling into the underlying permafrost. *Id.* at 938. The long history of *ALPAC v. Collins* can be summarized as follows: The insured, a general contractor, constructed and sold a home in the Fairbanks area. *Id.* Shortly afterward, the house began to experience

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

problems with differential settlement and the buyer sued the builder. *Id.* The builder's general liability insurer, ALPAC, investigated the claim and dennied coverage. *Id.* at 938-39. Although the builder had purchased broad form property damage coverage, ALPAC maintained the claims against the builder fell under the "completed work" exclusion, which barred coverage where there has been "property damage to work performed by the Named Insured arising out of such work." *Id.* at 942. ALPAC did not defend the insured, who nonetheless appears to have defended the buyers' claims on his own. After a non-jury trial in which some claims were dismissed, the trial court entered judgment against the insured for over $400,000. *Id.* at 939. At this point ALPAC approached the plaintiff-buyers and "purchased" their judgment against the builder for $150,000. *Id.* at 940 n.2. Notwithstanding the removal of the judgment, the builder sued ALPAC for bad faith and breach of contract. *Id.* at 939-40. The court in the bad faith action ruled that the "completed work" exclusion did not apply as a matter of law and granted summary judgment in favor of the builder on coverage. *Id.* at 940. At trial, the jury returned a verdict against ALPAC for over $400,000 in compensatory damages and an equal amount in punitive damages. *Id.* ALPAC appealed. *Id.*

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

19

The Alaska Supreme Court held that the trial court should not have granted summary judgment on the coverage issue. *Id*. at 942-43. A genuine issue of material fact existed on the

> crucial question [of] whether the permafrost
> damage to the Box house constituted damage arising
> out of Collins' [the named insured's] work.    If
> the work which caused the damage was not performed
> by Collins, or if the damage cannot fairly be
> attributed to work performed by him, then the
> "completed work" exclusion does not apply and
> Collins is covered.

*Id*. at 943.[3]

The court elaborated that the exclusion would not apply in two situations.    First, coverage would exist to the extent that damage was caused by "external forces," and not by forces arising out of the insured's own work.    *Id*. at 942-43.    If it was determined that the builder was not responsible for the damage, e.g., if the damage resulted from conditions outside the scope of his work, then the completed work exclusion would not apply.    *Id*.

Secondly, the court stated that coverage would exist to the extent that the damage was caused by the work of a subcontractor hired by the builder:    "By its terms the `completed work'

---

[3] After reviewing the complaint, the Alaska Supreme Court also concluded that all of its allegations indicated "fault on the part of Collins [and since] ALPAC would not be liable for damage to the Boxes' home as a result of Collins' work giving rise to damage, the complaint did not contain allegations which would serve to subject ALPAC to liability." *Id.* at 945.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

20

exclusion also requires that the work be performed by the `named insured,' Collins, and not merely by one `on his behalf.'" *Id.* at 943 n.7 (explaining that the purchase of broad form property damage coverage limited the completed work exclusion to work performed by the insured, rather than the usual, broader exclusion for work performed "by or on behalf of" the insured).

The most recent Alaska case dealing with broad form property coverage is *Fejes v. Alaska Insurance Company, Inc.*, 984 P.2d 519, 525 (Alaska 1999). *Fejes* involved allegedly defective work by a subcontractor who negligently installed a curtain drain, which then damaged the septic system installed by the general contractor. *Id.* at 521. The homeowner sued the general contractor. *Id.* Like Lutz, the general contractor in *Fejes* had purchased broad form property damage liability coverage, in the absence of which coverage would certainly have been excluded. *Id.* Exclusion (o) in the *Fejes* policy would have excluded coverage for "property damage to work performed by or *on behalf of* the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith." *Id.* at 524. Exclusion (o), however, was replaced by a narrower group of exclusions, Exclusions (A)(1) through (A)(3), whose effect was to expand the insured's

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

21

liability coverage for property damage. *Id.* at 525. Specifically, the new exclusions deleted (o)'s exclusion of work performed "on behalf of a named insured." *Id.* The effect of this deletion was to provide coverage as to work performed for the named insured by subcontractors. *Id.* The Alaska Supreme Court held the loss was not excluded from the general contractor's liability coverage because it arose from the operations of a subcontractor:

> Exclusion (A)(3) removes coverage as to property damage or work performed by the named insured, but not by someone on behalf of the named insured. Since the property damage in this case arose from the subcontractor's work, the exclusion does not apply.

*Id.*

*Colver*, *Collins*, and *Fejes* are of limited help in resolving the issues in this case because those cases did not involve the difference between a supplier and the subcontractor when the supplier peforms all of the work off-site.

**B.    Alaska Statutes**

Alaska statutes do not define what constitutes a subcontractor versus a supplier or a materialman in the context of determinining coverage under a commerical liability policy. In the context of mechanics liens, the Alaska Legislature has

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

22

defined "subcontractor" as "a person who enters into a contract with a prime contractor to furnish labor, services, or equipment for the construction, alteration, or repair of a building or other improvement on the owner's real property and does not include a materialman."  AS 34.35.120(17).  A "materialman" is "a person who furnishes materials used in the construction, alteration, or repair of the owner's real property."  AS 34.35.120(12).  Under these definitions, Theriault would be a materialman rather than a subcontractor because Theriault simply provided Hurlen with materials that were used in the construction of the Homer Docket (i.e., coated piles).

### C.    Authority From Other Jurisdictions

The cases relied on by Hurlen in support of its argument that a supplier of components of a construction project is a subcontractor for purposes of the subcontractor exception to the "your work" exclusion are not on point Alaska or Ninth Circuit authority and thus not binding on this Court.  *See* Motion for Partial Summary Judgment at 14-21.

The cases Hurlen relies on are also distinguishable from the case at bar.  *See* Motion For Partial Summary Judgment at 14-21. For example, in *Limbach Co. LLC v. Zurich American Ins. Co.*, 396 F.3d 358, 364 (4th Cir. 2005), the Fourth Circuit Court of

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

23

Appeals concluded that Thermacor was a subcontractor because Thermacor custom manufactured a steam pipe in accordance with the shop drawings and project specifications and the company provided on-site installation instructions. *Id.* Similarly, in *Wanzek Constr., Inc. v. Employers Ins.*, 679 N.W.2d 322, 329 (Minn. 2004), the Minnesota Supreme Court concluded that that a supplier of coping stones for a new swimming pool was a subcontractor for purposes of the "your work" exclusion, since the supplier custom manufactured the coping stones to the architect's specifications and provided on-site supervision in connection with the installation). Hurlen's reliance on *Limbach* and *Wanzek* is inapposite as the situation with Theriault is distinguishable from the subcontractors in *Limbach* and *Wanzek*. Here, it is undisputed that all Theriault did was provide materials—it did not provide any on-site installation or supervision, unlike the subcontractors in *Limbach* and *Wanzek*. Thus, under the Fourth Circuit's and the Minnesota Supreme Court's reasoning, Theriault would not be considered a subcontractor for insurance coverage purposes.

Hurlen also relies on *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Structural Systems Technology, Inc.*, 756 F. Supp. 1232, 1239-40 (E.D. Mo. 1991), *affirmed* 964 F.2d

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

24

759, 763 (8th Cir. 1992) (concluding that the subcontractor exception to "your work" exclusion in general liability policy applied to a general contractor that built radio broadcast tower that collapsed, even though third party had manufactured steel rods which contractor was replacing in the tower; contractor contracted with third party to fabricate specially designed steel rods for tower, and, thus, third party was subcontractor).  *See* Motion for Partial Summary Judgment at 14-15.  In *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Structural Systems Technology, Inc.,* a supplier of steel components to be used on a tower was found to be included as a subcontractor for purposes of the "your work" exclusion of the general contractor's insurance policy.  756 F. Supp. 1232, 1239-40 (E.D. Mo. 1991), *affirmed* 964 F.2d 759, 763 (8th Cir. 1992).  But the court based its decision primarily on the fact that the insurer had failed to produce facts demonstrating that the supplier was not a mere materialman as opposed to a subcontractor.  *Id.,* 756 F. Supp. at 1240 ("National has not proven to this Court that LeBlanc & Royle was merely a materialman and not a subcontractor within the meaning of the contract.")  Here, in contrast to the situation in *National Union*, as previously explained, there are numerous facts indicating that Theriault was a materialman/supplier and not a

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

25

subcontractor (i.e., the parties styled the supply contract as a supply contract not as a subcontract, the contract defined subcontractor in a manner that excludes Theriault, etc.).

Hurlen cites various other cases in which courts attempted to determine whether a materialman was a supplier or a subcontractor. *See* Motion For Partial Summary Judgment at 18-20 (citing *U.S. for Use and Ben. of Conveyor Rental & Sales Co. v. Aetna Cas. & Surety Company*, 981 F.2d 448, 451-52 (9th Cir. 1992); *Thorsheim v. State*, 469 P.2d 383 (Alaska 1970); *Jacobsen Const. Co., Inc. v. Industrial Indem. Co.*, 657 P.2d 1325 (Utah 1983)). But, notably in contrast to the situation here, in none of those cases did the underlying construction contract between the parties explicitly define subcontractor and explain in other documents who would be a subcontractor.

Moreover, contrary to the selected outside authority cited by Hurlen, other courts have concluded that a party that merely supplies material, whether or not it is custom made, is a supplier and not a subcontractor. *See, e.g.*, *Sterling Custom Homes Corp. v. Comm'r of Revenue*, 391 N.W.2d 523, 524-25 (Minn. 1986) (concluding that a subcontractor is one who installs the product and does not include a party who merely supplies the material and thus holding that provider of prefabricated custom

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

26

home components was supplier of personal property and not a contractor or subcontractor); *Zanco, Inc. v. Michigan Mut. Ins. Co.*, 464 N.E.2d 513, 514-15 (Ohio 1984) (where counterclaim alleged that developer breached its duty to construct condominiums in a workmanlike manner, thereby causing defects in structure, and developer did not deny such defects, but, rather, claimed that fault lay with its suppliers, who allegedly furnished developer with defective materials, the "work performed" and "product" exclusions contained in comprehensive general liability policy were applicable, and thus insurer had no duty to defend developer against counterclaim); *see also Ross Island Sand & Gravel Co. v. General Ins. Co. of America*, 472 F.2d 750, 751 (9th Cir. 1973) (concluding that by reason of provision of liability policy excluding from coverage cost of replacing or repairing any defective goods sold or defective work done by insured, a ready-mix concrete supplier, insurer had no duty to defend a claim by a building contractor who suffered a loss because of a delivery of non-conforming or defective concrete). Outside of the insurance context, a majority of courts have concluded that "one who merely furnishes materials to the owner or a contractor is a materialman, and not a contractor or subcontractor[.]"     *See* G. Van Ingen, *Who is contractor or*

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

27

*subcontractor, as distinguished from materialman, for purposes of mechanic's lien, contractor's bond, or other provision for securing compensation under construction contract*, 141 A.L.R. 321 (2004) (stated in context of analyzing mechanic's liens).

Here, as previously explained, unlike in the cases relied on by Hurlen, the parties explicitly defined subcontractor in a manner that excludes Theriault from being considered a subcontractor. Moreover, the extrinsic evidence surrounding the Homer Dock project demonstrates that Theriault was a supplier and not a subcontractor. Consequently, Travelers had no duty to defend or indemnify Hurlen and Travelers is entitled to summary judgment.

## IV. Because There Has Been No Occurrence Under The Policy There Is No Duty To Defend Or Indemnify

An insurer does not have a duty to defend or indemnify when there has not been an occurrence under the Policy. A majority of jurisdictions deciding this issue have held that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy. *See, e.g.*, *Jakobson Shipyard, Inc. v. Aetna Casualty & Surety Co.*, 961 F.2d 387, 389 (2d Cir. 1992) (faulty workmanship which does not comply with contract specifications is not an occurrence triggering coverage under CGL policy; applying New

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

28

York law); *Dreis & Krump Manufacturing Co. v. Phoenix Insurance Co.*, 548 F.2d 681, 688-89 (7th Cir. 1977) (property damage to industrial equipment resulting from defective manufacture is not an occurrence); *Reliance Insurance Co. v. Mogavero*, 640 F. Supp. 84, 86-87 (D. Md. 1986) (occurrence "does not include the normal, expected consequences of poor workmanship"); *United States Fidelity & Guaranty Corp. v. Advance Roofing & Supply Co.*, 788 P.2d 1227, 1233 (Ariz. App. 1989) (mere faulty workmanship is not an occurrence under CGL policy); *Pursell Constr., Inc. v. Hawkeye-Security Ins. Co.*, 596 N.W.2d 67, 71 (Iowa 1999); *Amerisure, Inc. v. Wurster Constr. Co., Inc.*, 818 N.E.2d 998, 1004 (Ind. App. 2004) (holding that faulty workmanship is not an accident and therefore not an occurrence); *Rivnor Properties v. Herbert O'Donnell, Inc.*, 633 So.2d 735, 751 (La. App. 1994) (no occurrence where contractor's liability is based upon improper construction or defective workmanship); *Hawkeye-Security Insurance Co. v. Vector Construction Co.*, 460 N.W.2d 329, 334 (Mich. App. 1990) (defective workmanship is not an occurrence under CGL policy); *Helie v. Herrmann*, 736 N.E.2d 566, 568 (Ohio App. 1999) (holding that faulty workmanship does not constitute an occurrence when the damage is to the work product only); *Monticello Ins. Co. v. Wilfred's Constr.*, 661 N.E.2d 451, 456

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

(Ill. App. 1996) (finding that improper construction by a contractor and its subcontractors does not constitute an occurrence when the improper construction leads to defects); *McAllister v. Peerless Insurance Co.*, 474 A.2d 1033, 1035-37 (N.H. 1994) (defective workmanship is not an occurrence).

For example, in *L-J, Inc. v. Bituminous Fire and Marine Insurance Compan*y, a developer hired a contractor to perform site-development work and build roads for the Dunes West subdivision. *Id.* at 2004 WL 3540903 at *1 (S.C. 2005). The contractor, in turn, hired subcontractors to perform most of the work. After the project was completed, the roads had deteriorated. *Id.* Because of the deterioration of the roads, the developer brought an action against the contractor for breach of contract, breach of warranty, and negligence. *Id.* After the underlying case settled, the contractor sought indemnification from the insurers. *Id.* The policy at issue in *L-J*, defined "occurrence" in an identical manner to the Policy in this case. *Compare* --- S.E.2d ----, 2004 WL 3540903 at *2, *with* Exh. 4 at 14 (attached to Motion for Partial Summary Judgment). The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The South Carolina Supreme Court concluded

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

that the insurers were entitled to summary judgment because as a matter of law there had not been an occurrence under the policy. Following the majority of jurisdictions around the country that had addressed the issue, the supreme court concluded that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy. In reaching is decision the court reasoned:

> If we were to hold otherwise, the CGL policy would be more like a performance bond, which guarantees the work, rather than like an insurance policy, which is intended to insure against accidents. *See State Farm Fire & Cas. Co. v. Tillerson*, 334 Ill.App.3d 404, 268 Ill.Dec. 63, 777 N.E.2d 986, 991 (Ill.App.Ct.2001) (holding that if courts were to find that CGL policies covered faulty workmanship, courts would effectively transforming CGL policies into performance bonds). A performance bond guarantees that the work will be performed according to the specifications of the contract by providing a surety to stand in the place of the contractor should the contractor be unable to perform as required under the contract. Consequently, our holding today ensures that ultimate liability falls to the one who performed the negligent work--the subcontractor--instead of the insurance carrier. It will also encourage contractors to choose their subcontractors more carefully instead of having to seek indemnification from the subcontractors after their work fails to meet the requirements of the contract.

*Id.* at *4.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

31

As the Indiana Court of Appeals explained in *Amerisure, Inc. v. Wurster Constr. Co., Inc.*:

> The second type of risk is occurrences which give rise to insurable liability. These occurrences are accidental injury to persons or property due to faulty workmanship. In other words, a business risk arises when, for example, a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work must be repaired or replaced by the contractor. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is covered under a CGL policy. Therefore, injury to persons and damage to other property constitute the risks intended to be covered under the CGL.

818 N.E.2d 998, 1004 (Ind. App. 2004) (citations and quotations omitted).

Here, irrespective of whether Theriault is characterized as a subcontractor or supplier, Travelers did not have a duty to defend or indemnify Hurlen if there was not an occurrence under the Policy. Exh. 4 at 2 (attached to Motion for Partial Summary Judgment). Hurlen and Homer are in a dispute over whether the pilings Theriault/Hurlen supplied for the Homer Dock project were improperly coated. *See* Exhs. 15 at 7, 16 at 7 (attached to Motion for Partial Summary Judgment). There is no dispute that

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

30-inch or 24-inch coated steel pipes are products. *See* Exh. 12 at 1-3 (attached to Motion for Partial Summary Judgment). There is also no dispute that there was no property damage to any property other than that pipes that have begun to show signs of corrosion and the epoxy coating flaking off. *See* Exhs. 15 at 7, 16 at 7 (attached to Motion for Partial Summary Judgment). Because Hurlen is claiming that Theriault's faulty workmanship caused the epoxy coating to come off, and faulty workmanship resulting in damage only to the work product itself does not constitute an occurrence under a CGL policy, Travelers had no duty to defend or indemnify Hurlen under the Policy. Travelers is therefore entitled to summary judgment.

**V.    Because The Damage To The Pilings Was Expected There Is No Duty To Defend Or Indemnify**

The Policy at issue covered Hurlen from June 1, 2001 to June 1, 2002. *See* Exh. 3 at 1 (attached to Motion for Partial Summary Judgment). As Hurlen states in its motion for partial summary judgment, as of May 2001, the coating on the pilings was peeling off. Motion for Partial Summary Judgment at 7 (citing affidavit of Grant Pool, the Hurlen project manager for the Homer Dock project). But, the policy did not cover "property damage" that was expected or intended:

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

33

This insurance does not apply to:

a.   "Bodily   injury"   or   "property   damage"
expected  or  intended  from  the  standpoint  of
the insured.

Exh.  4  at  2.    Because  Hurlen  was  already  on  notice  that  the

coating  on  the  pilings  was  peeling  off  before  the  Policy  even

became  effective,  the  damage  to  the  pilings  was  "expected"  from

Hurlen's  standpoint.    Because  expected  damage  is  not  covered

under  the  Policy,  Travelers  had  no  duty  to  defend  or  indemnify

Hurlen.    *Id.*    Travelers  is  therefore  entitled  to  summary

judgment.

## VI.  **Because The Policy Did Not Cover American Civil Constructors West Coast, Inc. And MRC Holdings, Inc., Travelers Had No Duty To Defend Or Indemnify Them**

Travelers  insured  Hurlen  Construction  Company  under  its

Policy.    *See*  Motion  for  Partial  Summary  Judgment  at  2.    The

Policy  covered  Hurlen  from  June  1,  2001  to  June  1,  2002.    *See*

Exh.  3  at  1  (attached  to  Motion  for  Partial  Summary  Judgment).

On  June  1,  2002,  Hurlen  was  sold  to  American  Civil  Constructors

West  Coast,  Inc.  ("ACC").    Exh.  1  at  1-4  (attached  to  Motion  for

Partial  Summary  Judgment).    Hurlen  then  changed  its  name  to  MRC

Holdings,  Inc.  ("MRC").    *Id.*  at  2  (attached  to  Motion  for  Partial

Summary  Judgment).    In  July  2003,  ACC  and  MRC  sued  Homer  and  in

August  2003  Homer  filed  a  counter  claim  against  MRC  and  ACC.    *See*

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

34

Exhs. 15, 16 (attached to Motion for Partial Summary Judgment). Because Travelers did not insure ACC or MRC under the terms of its Policy and because Homer has not asserted a claim against Hurlen in the underlying action, Travelers did not have a duty to defend or indemnify ACC or MRC. The Court should therefore grant Travelers' motion for summary judgment.

## VII. Exclusion H Precludes Coverage

Exclusion h(6)(a) of the Policy provides that the Policy does not apply to:

> h.    Damage to Property
>
> > (6)   That particular part of any property:
> >
> > > (a) On which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations[.]

Exh. 4 at 4 (attached to Motion for Partial Summary Judgment). Assuming *arguendo* that Theriault is considered a subcontractor, the Policy nonetheless excluded coverage for any property damage that arose from Theriault performing operations on the pilings (i.e., such as improperly coating the pilings). *See id.* Travelers would therefore be entitled to summary judgment because

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

35

the Exclusion h(6)(a) precludes coverage under the facts of this case.

Travelers would also be entitled to summary judgment pursuant to Exclusion h(6)(b) of the Policy. *See id.* Exclusion h(6)(b) of the Policy provides that the Policy does not apply to:

> h.   Damage to Property
>
>> (6)   That particular part of any property:
>>
>>> (b)   That must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>>
>>     . . . .
>>
>>> Paragraph (6)(b) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*Id.*

For the reasons previously explained, *see* supra Sections II and III, any work by Theriault that was incorrectly performed in coating the pilings is not covered under the Policy because Theriault was a supplier and not a subcontractor and the policy only covered work performed by a subcontractor. *See* Exh. 4 at 4-5 (attached to Motion for Partial Summary Judgment). Travelers is therefore entitled to summary judgment because Exclusion h(6)(b) precludes coverage.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

36

## VIII.    Exclusion I Precludes Coverage

Exclusion i of the Policy provides that the Policy does not apply to "Damage to Your Product":

> i.    Damage to Your Product
> "Property Damage" to "your product" arising out of it or any part of it.

*See* Exh. 4 at 4 (attached to Motion for Partial Summary Judgment).  The Policy defined "your product":

> a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed or by:
>
> (1)  You;
> (2)  Others trading under your name; or
> (3)  A person or organization whose business or assets you have acquired[.]
>
> b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Id.* at 15.

Here, there is no dispute that Hurlen and/or Theriault supplied the Homer Dock project with a product, i.e., epoxy coated pipes that were used as pilings for the dock.  Exh. 12 at 1-15 (attached to Motion for Partial Summary Judgment).  These pipes/pilings have subsequently suffered damage, i.e., peeling off of the epoxy coating and corrosion.  *See* Motion for Partial Summary Judgment at 7-8.  Therefore, Exclusion i of the Policy

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

37

unequivocally precludes coverage because the Policy does not apply to "Damage to Your Product." Travelers is therefore entitled to summary judgment because it had no duty to defend or indemnify Hurlen.

## IX.    Exclusion J Precludes Coverage

Exclusion j of the Policy provides that the Policy does not apply to "Damage to Your Work":

> j.    Damage to Your Work
> "Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Exh. 4 at 5 (attached to Motion for Partial Summary Judgment).

For the reasons previously explained, *see* supra Sections II and III, any work performed either by Hurlen or Theriault is not covered under the Policy. Specifically, the subcontractor exception to Exclusion j is not applicable here because Theriault was not a subcontractor, rather Theriault was a supplier. *See id.* Travelers is therefore entitled to summary judgment because Exclusion j precludes coverage.

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

38

## X.    Exclusion K Precludes Coverage

Exclusion k provides that the Policy does not apply to "Damage to Impaired Property or Property Not Physically Injured":

> k.    Damage to Impaired Property or Property Not Physically Injured
>
> "Property damage" to impaired property" or property that has not been physically injured, arising out of:
>
> (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*Id.* at 4.

Here, to the extent that the claims at issue in the underlying litigation are based on impaired property or defective products, Exclusion k precludes coverage. In other words, if Homer is claiming that the pilings are impaired because the coating on the pilings was defective, Travelers was not obligated

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

39

to defend or indemnify Hurlen because of Exclusion k.  *See* Exh.
16 at 7 (attached to Motion for Partial Summary Judgment)
(claiming that the corrosive coating application was defective).
The Court should therefore grant Travelers' motion for summary
judgment.

### CONCLUSION

For the reasons set forth above, the Court should deny
Hurlen's motion for partial summary judgment and grant Travelers'
motion for summary judgment.

DATED this ___22nd___ day of December, 2005, in Anchorage,
Alaska.

                          DELANEY, WILES, HAYES,
                          GERETY, ELLIS & YOUNG, INC.
                          Attorneys for Defendant
                          Travelers Indemnity Company
                          of America


                          _____
                          Clay A. Young
                          Alaska Bar Assoc. No. 7410117


                          _____
                          Eric A. Ringsmuth
                          Alaska Bar Assoc. No. 0305019

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

40

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _22nd_ day of December, 2005, a true and accurate copy of the foregoing was mailed to the following:

Brooks W. Chandler
Boyd Chandler & Falconer, LLP
825 W. 8th Ave., #200
Anchorage, AK  99501

David W. Pease
Burr, Pease & Kurtz
810 N St.
Anchorage, AK  99501-3293

_____
Dru Lippert
110430

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

41

Clay A. Young
Delaney, Wiles, Hayes,
Gerety, Ellis & Young, Inc.
1007 W. 3rd Ave., Ste. 400
Anchorage, AK  99501
907-279-3581
907-277-1331 fax

Attorneys for Travelers Indemnity
Company of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AMERICAN CIVIL CONSTRUCTORS WEST COAST, INC. and MRC HOLDINGS, INC. f/k/a HURLEN CONSTRUCTION COMPANY, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ZURICH AMERICAN INSURANCE COMPANY and TRAVELERS INDEMNITY COMPANY OF AMERICA, )<br><br>Defendants. ) | Case No. A05-153 CV (JWS)<br><br>**TABLE OF CONTENTS FOR EXHIBITS TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Exhibit A        Contractor List for Homer-Kachemak Bay, Multi-Purpose Ocean Dock

Exhibit B        State of Alaska Monthly Summary of Disadvantaged Business Enterprise Participation for City of Homer-Kachemak Bay Multi-Purpose Ocean Dock

Exhibit C        State of Alaska required subcontractor paperwork sent to Chuck Correa on 8/7/01

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Exhibit D        Subcontract Change Order from Hurlen Construction
Company to Foster Construction, Inc. dated 4/17/02

Exhibit E        Subcontract Agreement between American Civil
Constructors - West Coast, Inc. and Dunkin & Bush,
Inc. dated 6/25/02

Exhibit F        Supply Agreement between Hurlen Construction
Company and Theriault Industries, Inc.

Exhibit G        Excerpts from deposition transcript of Grant Pool,
taken 12/14/05

DELANEY, WILES,
HAYES, GERETY,
ELLIS & YOUNG, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

2