Brooks W. Chandler, Esq.
State Bar No. 8310109
BOYD, CHANDLER & FALCONER, LLP
911 W. 8th Avenue, Suite 302
Anchorage, Alaska 99501
(907) 272-8401
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF ALASKA AT ANCHORAGE

| | |
|---|---|
| AMERICAN CIVIL CONSTRUCTORS WEST COAST, INC. and MRC HOLDINGS, INC. f/k/a HURLEN CONSTRUCTION COMPANY <br><br><br> Plaintiffs, <br><br> vs. <br><br> ZURICH AMERICAN INSURANCE COMPANY and TRAVELERS INDEMNITY COMPANY OF AMERICA CASUALTY COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. A05-153 CV (TMB) |

REPLY TO TRAVELERS OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

# INTRODUCTION[1]

The phrase "throw in everything but the kitchen sink" comes to mind when reviewing Traveler's memorandum. Each and every argument raised by Travelers (some of which are internally inconsistent) failed to allow Travelers to avoid its duty to defend Hurlen from the Homer claim.

### A. The City of Homer Contract Does Not Establish the Meaning of Subcontractor in the Travelers' Policy.

Travelers' entire argument proceeds from a faulty premise– i.e. that the general term subcontractor (which must be interpreted broadly in favor of the insured) should be divided into two types of subcontractors- those that work off-site and those that work on-site with completed operations coverage only extended to the on-site subcontractors.

The distinction Travelers attempts to draw between an on-site subcontractor and an off-site subcontractor <u>is not contained in the Travelers insurance policy</u>. The Travelers insurance policy does <u>not</u> contain a "supplier" exclusion. Instead, the policy provides coverage for completed operations performed by "subcontractors". Travelers controlled the language of its policy. Travelers could have attempted to limit completed operations coverage to subcontractors who worked on site. Travelers

---

[1] Hurlen files this opposition even though Hurlen believes the issues raised in the cross motions must be decided by an arbitrator. <u>See</u>, Memorandum in Support of Motion to Order Arbitration. [Dkt. No. 46]. Hurlen does not waive this claim by filing this memorandum. Should arbitration be ordered as requested these pleading will simply be forwarded to the arbitrator for decision.

Page 2                                                             lf.bc.acc.Electronic.pldgs.opp.reply.060206

did not. Travelers could have included a contractual definition of subcontractor that excluded subcontractors who "merely" supplied materials to the project. Travelers did not. The work accomplished by Theriault falls within the commonly understood dictionary definition of "subcontractor". The dictionary definition does not distinguish between a subcontractor whose portion of the work involves off site custom fabrication and coating of pipe pile and a subcontractor whose portion of the work involves on site custom fabrication and coating of pipe pile.

Travelers' claims the City of Homer/Hurlen construction contract determines the meaning of the word "subcontractor" used in the Travelers' insurance policy. Opposition Memorandum at 14-15. This turns basic rules of insurance policy interpretation on their head. "The contract" at issue is the Travelers-Hurlen insurance contract not the Hurlen-Homer construction contract. The common general definition of subcontractor must control over the specialized project specific definition created, not by Travelers but by Homer, and contained in a contract to which Travelers is not a party.

What Travelers calls a "supplier" fully meets the dictionary and commonly understood meaning of "subcontractor". It is this common definition of a word used in the insurance policy not a definition in a particular construction contract that determines the scope of Travelers' duty to defend. <u>Stewart-Smith Haidinger v. Avi-Truck, Inc.</u>, 682 P.2d 1108, 1118 (Alaska, 1984)(reasonable expectation of the

insured as a "lay person" rule applied over objection of insurer that insured was experienced in the air taxi business and a different standard should apply).

Reference to the commonly understood definition of "subcontractor" by focusing on the dictionary definition yields a consistent result from job to job and project to project for both parties to the insurance policy. The approach to policy interpretation urged by Travelers results in a stranger to the insurance policy (the City of Homer or any other project owner) defining the scope of the insurer's obligations to the insured. The scope of that obligation could differ depending on how (or whether) a particular project owner chose to define "subcontractor" in a particular construction contract. Theriault could custom fabricate and coat dock piles for Hurlen for a dock in Seldovia as a "subcontractor" for purposes of completed operations coverage under the Travelers insurance policy if Seldovia's construction contract contained the dictionary definition of subcontractor. Yet Theriault could do precisely the same work for Hurlen for the Homer project with the opposite coverage result under the <u>identical</u> insurance policy. It simply does not make sense to allow a project owner to dictate the scope of coverage under an insurance contract to which the owner is not a party. Identical work performed by Theriault should lead to an identical scope of coverage under the same Travelers policy. The only way to insure this occurs is to apply a definition of subcontractor that does not allow a public project owner to determine the scope of insurance coverage.

Even if the Homer contract definition did control what the word "sucontractor" means in the insurance policy, Theriault meets the definition. Theriault did "act for or on behalf of . . . [Hurlen] in the performance of a part of the contract". Theriault was not simply a "producer" of materials. As set forth in Plaintiffs' memorandum, Theriault took lengths of steel pipe and applied labor in the form of application of coating and welding of cutting shoes in order to make the dock piles meet Hurlen's contract specifications for the project.

Similarly, whether Theriault was considered a subcontractor for purposes of the Little Davis Bacon Act is not determinative of whether Theriault is a subcontractor for purposes of the Traveler's insurance policy. The Little Davis Bacon Act is a specific statutory scheme intended to promote a specific public policy. see generally, Board of Trade, Inc. v. State, 968 P.2d 86, 90(Alaska 1998)( fundamental purpose of the Little Davis Bacon Act is to ensure that employees working on public construction projects receive at least the prevailing wage). The Act itself, does not necessarily draw the distinction Travelers' claims between work performed on or off a job site. see, 8 AAC 30.910(a)("on-site" includes areas that are "nearby").

Travelers' claim that Theriault would be a "materialman" for purposes of Alaska's mechanic's lien statute is not supported by the language of the statute. Travelers does not dispute that Theriault did more than simply "supply" pipe purchased elsewhere. Theriault cut, welded and coated the pipe. Theriault furnished labor (welders and pipe coaters), services (welding and coating services) and

equipment. (the piles were prepared for coating using a "wheelabrator" for example, Affidavit of Grant Pool). Theriault did not simply supply coated piles. Theriault bought raw steel piles, cut them to length, applied coating, welded cutting shoes and then sent the significantly altered "material" to the job site.

### B. Precedent Favors Finding a Duty to Defend.

Travelers does not and cannot dispute the basic rules of insurance policy interpretation embraced by the Alaska Supreme Court. Bering Straights Sch. Dist. v. RLI Insurance Co., 873 P.2d 1292, 1295 (Alaska 1994)(exclusions from coverage interpreted narrowly); Hahn v. Alaska Title Guaranty Co., 557 P.2d 143, 145 (Alaska 1976)(same); Baugh-Belarde Const. Co. v. College Utilities Corp., 561 P.2d 1211, 1215, n. 7 (Alaska 1977)(ambiguities arising from the language of the policy are construed against the insurer).  Moreover, the Alaska cases discussed by Travelers support Hurlen's position.  The Collins court clearly indicated completed operations coverage exists for work performed on an insured's behalf by a subcontractor. Collins, 794 P.2d 936, 943(Alaska 1990)("if the work which caused the damage was not performed by Collins . . . then the "completed work" exclusion does not apply).

Traveler's attempt to distinguish out of state precedent is unconvincing.  That Theriault did not provide installation instruction or on-site supervision of pile driving and installation does not restrict the scope of Traveler's obligations to defend the Homer claim.  Neither Wanzek nor Limbach created a bright line rule based on physical presence on site.  In addition, Travelers conclusion that National Union, the

closest case factually to the instant case, was based on a failure of proof is not supported by the National Union court's analysis. For all we know, the contract at issue in National Union had the same definition of "subcontractor" as does Homer's contract. For all we know, the insured in National Union issued a written agreement to the person that provided steel components of the tower identifying that person as a "supplier". The decision does not discuss the particular evidence produced or not produced– Traveler's conclusion regarding the National Union record is pure unadulterated speculation with a capital S.

Similarly unsupported is Travelers' assertion that "in none of those cases did the underlying construction contract between the parties explicitly define subcontractor". Opposition at p.26. The language of the construction contract is not discussed by these courts. The reason the construction contract language is not discussed does not necessarily mean "subcontractor" was not defined in the construction contract. It is equally likely that "subcontractor" was defined and the Court, without discussion, concluded that the definition of subcontractor in a construction contract was irrelevant to determining what subcontractor meant in an insurance policy.

The out of state cases relied on by Travelers are easily distinguishable. Sterling Homes v. Commissioner or Revenue, 391 NW2d 523 (Mn. 1986) is a sales tax case interpreting the definition of subcontractor in a Minnesota sales tax regulation. As demonstrated in Wanzek, Minnesota does not apply its sales tax regulation as an aid to

interpret the meaning of the word "subcontractor" in an insurance policy. In <u>Zanco, Inc. v. Michigan Mut. Ins. Co.</u>, 464 NE2d 513 (Ohio 1984), the issue of the subcontractor exception for completed operations coverage is never discussed. In fact, it is not apparent from the decision if the developer even had completed operations coverage. The court appears to have relied on the "your product" exception which, as discussed <u>infra</u>, is of no avail to Traveler's attempts to avoid its duty to defend Hurlen from the Homer claim.

In <u>Ross Island Sand and Gravel Co. v. Gen'l Ins. Co. of America</u>, 472 F.2d 750 (9th Cir. 1973), the issue was whether the insurer of a subcontractor who furnished cement for the project (the word "supplied" was used by the court without discussion, analysis, or explanation) had a duty to defend a claim asserted by the <u>general contractor</u>. There is no indication the subcontractor/supplier of cement had itself subcontracted any portion of the work. There is no indication that policy at issue provided completed operations coverage. The brief opinion is not helpful to Travelers.

        **C.**    **The Property Damage to the Homer Dock Was an Occurrence.**

Travelers now asserts the damage to the Homer Dock was not an "occurrence" for purposes of insurance coverage. Travelers' Memo at pp. 28-33. Travelers <u>never</u> asserted such a claim in either of its previous denial letters. <u>See</u>, Exhibits 21 and 23 to Hurlen's Memorandum. Moreover, Travelers' position is directly contrary to that taken by Zurich regarding the same damage. <u>See</u>, Exhibit 25 (attached hereto), p.2("our position at present is that the failure of the coating as initially applied and as repaired come within the definition of 'occurrence' as used in the policy") and

contradicts the deposition testimony of Traveler's adjuster. Deposition of Deveney Totten p.16, L. l5. Travelers relies exclusively on out of state precedent. Not discussed by Travelers is the Alaska case that decides this precise issue. <u>Fejes v. Alaska National Ins. Co.</u>, 984 P.2d 519, 522-523(Alaska 1999)(failure of curtain drain as a result of improper construction is "occurrence").

In <u>Fejes</u>, a contractor building a home subcontracted for the installation of an on-site septic system. One portion of the subcontracted work involved construction of a "curtain drain" designed to prevent infiltration of ground water into the septic system. A subsequent homeowner claimed defective installation of the curtain drain resulted in damage to the remaining portion of the septic system ultimately causing its failure. <u>Id</u>. p. 521. Like the Travelers' policy at issue here, the Alaska National policy at issue in <u>Fejes</u> defined "occurrence" as an "accident". <u>Id</u>. at 522-523, <u>see</u>, Exhibit 4 to Hurlen's Memorandum p.14 (Section V(12). The <u>Fejes</u> court concluded an "accident" for purposes of CGL coverage was "anything that 'begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected'." <u>Id.</u> at 523 <u>quoting</u>, <u>INA Life Ins. Co. v. Brundin</u>, 533 P2d 236, 242 n.23 (Alaska 1975). Reasoning that the subcontractor did not intend to install the curtain drain in a manner that resulted in its permature failure, the Court held the claim arose from an accident. <u>Id</u>.

The <u>Fejes</u> facts and policy language are not distinguishable. Like the curtain drain in <u>Fejes</u>, the coating on the pile was intended to prevent the infiltration of water,

in this case, corrosive sea water.  Like the homeowner in <u>Fejes</u>, Homer alleged the protective work failed resulting in precisely such infiltration damaging the pile and shortening their useful life.  <u>See</u>, Exhibit 16, p.7 (para. 5); Exhibit 17, pp.8-11.  Like the contractor and subcontractor in <u>Fejes</u>, neither Hurlen nor Theriault expected or intended the pile coating to fail and resultant damage to the dock pile to ensue as a result of the coating failure.  Accordingly, <u>Fejes</u> controls and Travelers' argument fails.

       **D.  The Property Damage to the Homer Dock Was not Intended.**

Travelers also claims the damage to the Homer Dock was "expected". . . "because Hurlen was already on notice that the coating on the pilings was peeling off before the Policy even became effective".  Travelers Memo at 34.  No facts are cited to support this assertion of counsel.  The effective date of the Travelers policy was July 1, 2001.  Exhibit 3 to Hurlen Memo.  The damage to the piling was first observed in the spring of 2002.  Affidavit of Grant Pool, para. 10.  Travelers argument is not consistent with the undisputed facts.

       **E.    The Corporate Name Change Did not Alter the Risks Assumed by Travelers At the Time it Issued the Policy And Does Not Allow Travelers to Avoid Coverage**.

Travelers claims that "because Homer has not asserted a claim against Hurlen under the Policy" it has no duty to defend MRC or ACC.  But, Homer did sue "MRC Holdings formerly known as Hurlen Construction Company".  Exhibit 16, p.7; Exhibit 17, p.8.  It is undisputed that Hurlen changed its name to MRC because the

right to the name "Hurlen" was sold to ACC. See, Hurlen Memorandum at pp. 20-21. Travelers cites no precedent for the proposition that changing the name of a corporation and selling the right to use that name results in a loss of coverage when the corporation and buyer of the corporate name are sued under the new legal name based on property damage that occurred before the corporate name changed. Travelers neither refutes nor disputes Hurlen's argument that denying coverage in such situations creates a fortuitous windfall for the insurer. An insurer who willingly accepted thousands of dollars of premium payments to accept risks associated with insuring a construction company should not be allowed to keep the premiums, but deny coverage for a loss that occurred during the policy period simply because the company changes its name and sells the right to use its old name to a different company prior to being sued. Cf. Stewart-Smith Haidinger, supra, 682 P.2d at 1112(risk insurer undertook determinative of whether to imply an additional insured on policy).

  **F.**  **Exclusion H Does Not Apply.**

As indicated by Hurlen, exclusion h(6)(b), under the express terms of the policy, "does not apply to 'property damage' included within the products-completed operations hazard". Hurlen Memo at 2, Exhibit 4 p. 4[SectionI(A)(2)(h)(6)]. At no point in 41 pages of argument does Travelers dispute that Homer's partial acceptance of the Dock meets the policy defintion of the products completed operations hazard. See also, Deposition of Deveney Totten p.45, L.22-p.46, L.5. Accordingly,

exclusion (h)(6)(b) does not apply. Exclusion h(6)(a) by its very terms applies only to property on which subcontractors such as Theriault "are performing operations". Theriault had already done its work when the property damage occurred. Accordingly Theriault was not "performing operations" at the time of the property damage and exclusion (h)(6)(a) does not apply.

### G.  Exclusion I Does Not Apply.

Again without citation to precedent, Travelers claims the installed Dock constituted a "good" or "product" of Hurlen thereby excluding coverage under exclusion I. Travelers Memo at 37. Ignored by Travelers is the policy definition of "good" or "product" as something "other than real property" Exhibit 4, p. 15 (definition 19). The Homer Dock was an improvement to real property. The Dock as accepted by Homer was "real property" not a "product". e.g. Wanzek Const. Inc.v. Employers Ins.of Wasau, 679 N.W.2d 322, 327 (Minn. 2004)(coping stone that was part of swimming pool was real property); accord, Lee Builders, Inc. v. Farm Bur. Mut. Ins. Co., 104 P.3d 997 (Kan. App. 2005). In Alaska, structures added to real estate are real property. K & L Distribs. v. Kelly Elec., 908 P.2d 429, 432-433(Alaska 1995)(electrical equipment and light fixtures). Accordingly, Exclusion I does not apply.

### H.  Exclusion K Does Not Apply.

As its final argument Travelers contends "if Homer is claiming that the pilings are impaired because the coating on the pilings was defective" exclusion K applies.

Use of the word "if" is fatal.  Hurlen's claim addresses a breach of the duty to defend.  The duty to defend exists whenever there is <u>potential</u> coverage.  Anytime an insurer has to use the word "if" in connection with what a plaintiff is claiming a duty to defend exists.  Use of the word "if" implies Homer might <u>not</u> be claiming that the piles are impaired but that they are actually damaged.  Moreover, the definition of "impaired property" means "tangible property <u>other than</u> . . . '<u>your work</u>'".  Exhibit 4, p.13 (definition 7).  "Your work" is defined as "work or operations performed by you or on your behalf".  The coating and fabrication of the allegedly damaged piles was performed on Hurlen's behalf by Theriault.  Accordingly, Homer's claim is for damage to "your work"and the impaired property exclusion does not apply.  Indeed, Traveler's recognizes Homer's claim is for damage to "your work" at page 38 of its memorandum.  In addition, the exclusion has repeatedly been held to be so ambiguous as to be unenforceable.  <u>E.g.</u>, <u>Computer Corner, Inc. v. Fireman's Fund Ins. Co.</u>, 46 P.3d 1264 (N.M. 2002); <u>Serigne v. Wildey</u>, 612 So.2d 155 (La. App. 1992), <u>cert. denied</u> 613 So. 2d 994(finding exclusion "hopelessly ambiguous").  As indicated above, ambiguity, of itself creates the potential for coverage which triggers a duty to defend.

## CONCLUSION

Travelers has thrown a lot of stuff at the wall but none of it sticks.  Its motion for summary judgement should be denied and Hurlens' Motion for Partial Summary Judgment should be granted.

Dated this 2nd day of June, 2006.

    s/Brooks W. Chandler
    Boyd, Chandler & Falconer, LLP
    911 W. 8th Avenue, Suite 302
    Anchorage, AK 99501
    Telephone (907) 272-8401
    Facsimile  (907) 274-3698
    E-Mail: bcf@bcf.us.com; bchandler@bcf.us.com
    State Bar No. 8310109
    Attorneys for Plaintiffs