# BOYD, CHANDLER & FALCONER

# MOTION FOR PARTIAL SUMMARY JUDGMENT

# FILED ON NOVEMBER 7, 2005

Brooks W. Chandler, Esq.
State Bar No. 8310109
BOYD, CHANDLER & FALCONER, LLP
825 W. 8th Avenue, Suite 200
Anchorage, Alaska 99501
(907) 272-8401
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF ALASKA AT ANCHORAGE

AMERICAN CIVIL CONSTRUCTORS WEST )
COAST, INC. and MRC HOLDINGS, INC. )
f/k/a HURLEN CONSTRUCTION )
COMPANY )
)
)
                    Plaintiffs,    )    Case No. A05-153 CV (JWS)
)
vs.                               )
)
ZURICH AMERICAN INSURANCE )
COMPANY and TRAVELERS INDEMNITY )
COMPANY OF AMERICA )
)
)
                    Defendants.    )
_____)

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs  MRC Holdings, Inc, f/k/a Hurlen Construction Company

("Hurlen"), and American Civil Constructors West Coast, Inc. ("ACC") by and

through its counsel of record, hereby requests entry of partial summary judgment and

entry of an order declaring that Travelers Indemnity Company of America

MOTION FOR PARTIAL SUMMARY JUDGMENT
lf.bc.acc.pldgs.PMSJ.MOT.110405f

1

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

("Travelers") owes a duty to defend Hurlen from the claims asserted against Hurlen by the City of Homer in Case No. 3AN-03-9770 Civil. This motion is made pursuant to F.R.C.P. 56 and 57 and is supported by the accompanying memorandum, affidavits, exhibits and pleadings on record. Hurlen respectfully requests that its motion be granted.

Dated this 7th day of November, 2005.

BOYD, CHANDLER & FALCONER, LLP

BY: _____

BROOKS W. CHANDLER
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that on November 7, 2005,
a true and correct copy of the above-referenced
document was hand-delivered to:

David W. Pease, Esq.
Burr, Pease & Kurtz, PC
810 "N" Street
Anchorage, AK 99501

Clay A. Young Esq.
Delaney, Wiles, Hayes, et al
1007 W. Third Avenue; Suite 400
Anchorage, AK 99501

BY: _____
Lynn Harris Ford

MOTION FOR PARTIAL SUMMARY JUDGMENT
lf.bc.acc.pldgs.PMSJ.MOT.110405f

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

2

Brooks W. Chandler, Esq.
State Bar No. 8310109
**BOYD, CHANDLER & FALCONER, LLP**
825 W. 8th Avenue, Suite 200
Anchorage, Alaska 99501
(907) 272-8401
Attorneys for Plaintiff

**BOYD, CHANDLER & FALCONER, LLP**
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF ALASKA AT ANCHORAGE

| | |
|---|---|
| AMERICAN CIVIL CONSTRUCTORS WEST COAST, INC. and MRC HOLDINGS, INC. f/k/a HURLEN CONSTRUCTION COMPANY )<br><br>Plaintiffs, )<br><br>vs. )<br><br>ZURICH AMERICAN INSURANCE COMPANY and TRAVELERS INDEMNITY COMPANY OF AMERICA )<br><br>Defendants. ) | Case No. A05-153 CV (JWS) |

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

        Plaintiffs request summary judgment on Hurlen Construction Company's claims against Travelers Indemnity Company of America ("Travelers") in the above-captioned matter. As set forth in greater detail below, Travelers owes a duty to defend Hurlen Construction Company ("Hurlen") from claims asserted against Hurlen by the City of Homer in the Alaska Superior Court ("the Homer Claim"). The Homer Claim

MEMORANDUM IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT

lf.bc.acc.pldgs.2005.1029.sjmemo.d

alleges property damage arising from completed work performed by a subcontractor of Hurlen. This brings the Homer Claim directly within the holding of the Alaska Supreme Court in <u>Fejes v. Alaska National Insurance Co.</u>, 894 P.2d 519 (Alaska 1999).

## I. FACTS

### A.    Parties.

Hurlen was[1] a general contractor. In April of 2001, Hurlen was awarded a contract to construct a new dock in Homer, Alaska. Exhibit 2. Travelers is a national insurer. Travelers issued Policy No. DT-CO-348K1567-TIA-01 to Hurlen for the policy period June 1, 2001 to June 1, 2002. Exhibit 3; Plaintiff's Complaint para. 6; Traveler's Answer para. 6.

### B.    The Traveler's Policy.

The Traveler's general liability coverage is written on Form GN C0 01 01 98. Exhibit 4. The limit for each occurrence is 1,000,000 and the general aggregate limit is 2,000,000. There is a $5,000 deductible. Exhibit 3; Exhibit 5.

The general liability coverage applies to "property damage" if the property damage "occurs during the policy period". (Exhibit 4, p. 2 [Section I(A)(1)(b)]) Standard exclusion "h" ("your property") "does not apply to 'property damage' included within the products-completed operations hazard". ( <u>Id</u>., p. 4 [Section I(A)(2)(h)(6)]) The products-completed operations hazard contains the standard definition including within the completed operations coverage work that has been "put to its intended use" even if that

---

[1] Hurlen was purchased by Plaintiff American Civil Constructors, West Coast Inc. ("ACC") in June of 2002. Exhibit 1.

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

work needs "correction, repair or replacement". ( Id., pp. 14-15 [Definition 14(a)(2)]).

Standard exclusion "j" ("your work") does not apply "if the damaged work or the work

out of which the damage arises was performed on your behalf by a subcontractor". ( Id.,

p. 5 [Section I(A)(2)(j)]) "Subcontractor" is not defined in the policy. These policy

provisions mean that Hurlen is entitled to a defense of claims of property damage to that

portion of the Homer Dock that has been put to its intended use if the damage is to work

performed by a Hurlen subcontractor. Fejes, supra, 984 P.2d at 524-525.

### C.   The Homer Dock Project.

The Kachemak Bay Multi-Purpose Ocean Dock project ("Homer Dock")

consisted of demolition, upgrade and expansion of a timber dock located on tidelands

and uplands owned by the City of Homer. Exhibit 6, p. 3. Major anticipated users of

the new facility were the United States Coast Guard, the Alaska State Ferry System and

Petro Marine, the local fuel barge service company. Id., p. 4; Exhibit 8, pp. 1-2.

Because Homer wished to minimize interruption in use of the major dock users, a two

phase construction process was anticipated. Exhibit 7. The first phase was to be

substantially completed in the first construction season. At the time of bid, the

anticipated end of Phase One was December 31, 2001. Exhibit 6, p. 4. Included in the

Phase 1 schedule were "construction of the new dock to grid 4" and completion of the

East trestle. Id., p. 5 [Section 20.9]. Homer anticipated that the work completed

during Phase 1 would be used by the Coast Guard during construction of Phase 2.

Exhibit 8, pp. 1-2.

Hurlen and Homer signed a contract for the Homer Dock on April 10,

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION            lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

2001. Exhibit 2. The contract price was $11,032,000. Id.

Not surprisingly, the steel piling supporting the new dock was a major component of the Homer Dock. The price for piling was Bid Item #1 ($2,334,112) and constituted twenty-two percent (22%) of the total contract price. Exhibit 2, p. 2; Exhibit 9, p. 2. The project specifications for the coated pile were at Division 900 of Hurlen's contract with Homer and required Hurlen to furnish all labor and materials required to finish and install the dock piling. Exhibit 6, pp.6-8. The specifications referenced ASTM and American Welding Society specifications, required submittals of product data and required testing at the mill where the customized pile would be produced. Id., p. 6, Exhibit 11, p. 4 [Materials Approval Data].

The piles were required to be coated. Exhibit 6, p. 6. The coating was intended to protect the piles from corrosion. Affidavit of Grant Pool, para. 9. The coating specifications were detailed in Addendum No. 3. Exhibit 8, pp. 3-19. The specifications required Hurlen to blast the piles with "grit" or a mixture of "shot" and "grit" to "rough up" the surface before applying the pile coating. Id., pp. 10-11 [Section 913.8(d), (e), (f)]; Exhibit 10, p. 2 [General Surface Preparation]. Coating application techniques were identified. Exhibit 8, pp. 15-16 [Section 913.11]. Pre- and post- coating testing was required. Id., pp. 16-18, [Section 913.12]. Affidavit of Grant Pool, para. 8-9.

In addition to these project specific requirements, the contract contained the City of Homer's "standard" construction specifications. Exhibit 11. The specifications allowed for the City to "Take possession of and use any completed or

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION       lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

partially completed portions of the work . . . such taking and use, shall be deemed an acceptance of that work completed in accordance with the Contract Documents". Id., p. 6 (Article 5.33).

D.    **Hurlen Subcontracts the Fabrication of Coated Piles to Theriault Industries, Inc.**

Hurlen contracted with Theriault Industries Inc. ("Theriault") for the "offsite fabrication" of the piles for the Homer Dock. Exhibit 12. The work to be accomplished by Theriault included fabrication of spirally welded dock piles, coating of the piles and inspection of the coating. The specifications for the project required individualized pile lengths because each pile had to reach a specific elevation after driving. Exhibit 12, pp. 7-15; Affidavit of Grant Pool, para. 3.   Each pile was "custom fit" for an exact location under the Dock. Theriault did not have piles in inventory. Theriault had to order the pile from a pile supplier. Affidavit of Grant Pool, para. 4.  After Theriault received the pile, Theriault cut and welded the pile to construction ready lengths configured to meet the project specifications on a pile by pile basis. Id. Theriault's welding work included customizing the ends of the piles to meet project specifications. Affidavit of Grant Pool, para. 5.  Many piles required a round end plate to be welded to the bottom of the pile. Some piles had conical tips welded to the end to displace rocks intended to be excavated during pile driving. Affidavit of Grant Pool, para. 5; Exhibit 12, pp. 8-15 ["Driving Shoe Type"].

Theriault was also responsible for preparing the piles for coating and coating the piles. The coating was required to extend twenty feet below the mud line for each pile. This meant the length of each pile that had to be coated varied.  Affidavit of

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION                    lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

Grant Pool, para. 7; Exhibit 12, pp. 8-15 ["Coating Length"]. The surface preparation prior to coating required the pile to be cleaned and the surface "roughed" to a certain depth to promote adherence of the coating. Affidavit of Grant Pool para. 8. This involved sending the pile through a wheelabrator which projected an abrasive mixture of "shot" and "grit" onto the pile. After the surface was prepared, coating was required to be applied in two coats to a specified thickness. Affidavit of Grant Pool, para. 9; Exhibit 8, pp. 13-15; Exhibit 10, p. 2 ["We recommend DEVGRIP 238 be applied in two coats of 10 mils".].

The specific techniques used by Theriault in performing its contract obligations had to be approved in advance by the Owner through a submittal process. Exhibit 8, pp. 7-9; Exhibit 12, p. 1 (Article 2); Exhibit 11, p. 4. Like Homer's payment schedule for installed piling, the contract pricing was based partially on unit prices with a lump sum for inspection. Exhibit 12, p. 3. Regular progress payments were required. Exhibit 12, p. 1 (Article 1). Theriault subcontracted the coating work to Calvert Industries, Inc.

### E. Homer Accepts Portions of the Dock.

Theriault accomplished its contract work and Hurlen installed the piling. Piling installation was completed in December 2001. As anticipated at the time the project began, Homer accepted "Phase I" of the Homer Dock on February 5, 2002. Exhibit 13. The Coast Guard immediately began using the "Phase I" portion of the dock. Of the total of 196 pilings driven for the entire project, 137 piles with 81 percent of the total lineal feet of coated pile for the project were included in Phase I. Exhibit 14, Affidavit of Grant Pool, para. 11.

Homer's acceptance and use of Phase I meant that Phase I was a

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

"products-completed operation" for liability insurance purposes.  Exhibit 4, pp. 14-15

[Section V.14.a.(2)(c)  ("'your work' will be deemed completed at the earliest of the

following times . . . (c) when that part of the work done at a job site has been put to its

intended use by any person or organization other than another contractor or

subcontractor working on the same project")].  This has significant ramifications for

purposes of insurance coverage for claims arising out of damage to Phase I of the Dock.

The exclusion for coverage for "your property" . . . "that must be restored, repaired or

replaced because "your work" was incorrectly performed on it" does not apply to

"'property damage' included in the 'products-completed operations hazard'".  Id. p. 4

[Section I(A)(2)(h)].  In addition, the exclusion for "your work" otherwise applicable to

work "included in the 'products-completed operations hazard' . . . does not apply if the

damaged work or the work out of which the damage arises was performed on your

behalf by a subcontractor".  Id., p. 5 Section I (A)(2)(j).

    **F.**    **Damage to the Dock.**

        By May of 2001, damage to the piling accepted by Homer had been

observed.  Affidavit of Grant Pool, para. 10.  The coating designed to protect the pile

from corrosion was peeling off.  Id.  Because Hurlen contracted with Theriault to

perform the coating, the damage "arose out of" work performed by Theriault.

Accordingly, if Theriault was a "subcontractor" of Hurlen, the damage to the Phase I

portion of the Dock would not be subject to the "your work" exclusion of the Policy.

E.g., Fejes, supra, 894 P.2d. at 524-525.

    **G.**    **Homer Sues Hurlen.**

        In July of 2003, Hurlen (now known as MRC Holdings, Inc.), and

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

American Civil Constructors West Coast, Inc., sued Homer in Alaska Superior Court. Hurlen's claim included a differing site condition claim based on harder than anticipated pile driving conditions. Exhibit 15, p. 7. Homer counterclaimed alleging Hurlen "failed to properly perform corrosive coating protection work on the piling supporting the dock". Exhibit 16, p. 7, para. 3(b). Homer claimed the cause of the piling damage was improper coating of the piles. Exhibit 16, p. 3, para 14. Homer claimed damage, including the cost to correct and downstream impacts from corrosion. Id., p. 7, Para. 5. Hurlen's claim was settled at mediation on September 25, 2004. The City's counterclaim was not settled. On December 17, 2004, the City amended its counterclaim to include claims against ACC. The City's second amended counterclaim contains the same general allegation against Hurlen of failure "to properly perform corrosive coating protection work", but added more detailed allegations related to the alleged failure in the claim against ACC. Exhibit 17, p. 8, para. 50(a); p. 10, para. 60(a). Homer alleged failures to "properly prepare the surface of the steel piles for the anti-corrosion coating" and to "properly apply, cure, and protect the anti-corrosion coating". Id., p. 10, para. 60(a)(ii), (iii). The Homer claim is scheduled for trial commencing January 9, 2006. Exhibit 18, p. 1.

### H.    Hurlen Tenders Defense to Travelers.

On March 7, 2005, Hurlen notified Travelers of the claim. Exhibit 19. On March 10, 2005, Travelers acknowledged receipt and began its insurance coverage investigation[2] with a request for documents from Hurlen. Exhibit 20. By April 4,

---

[2] Travelers investigated potential coverage under three policies. This motion pertains only to policy year June 1, 2001-June 2, 2002 ("the 2001 Policy").

MEMORANDUM IN SUPPORT OF MOTION                    lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

2005, Travelers told Hurlen in effect to "tell us when you have been sued".  Exhibit 21.

On April 19, 2005, Hurlen provided proof of the name change of the company from

Hurlen to MRC Holdings.  Exhibit 22.  Travelers then continued its coverage

investigation and, on May 27, 2005, denied Hurlen's request for a defense. Exhibit 23.

        The primary basis for denial was exclusion "j" for "your work" and

exclusion "h (6)" for "your property".  Exhibit 23, pp. 7-11.  This lawsuit followed.

The Complaint, originally filed in state court, named both Travelers and Zurich American

Insurance Company as defendants.  The Complaint requests declaratory relief concerning

the duties of the two insurers to provide a defense to the Homer claim.  This motion

addresses only Traveler's obligations to defend Hurlen.

## II.  ISSUES PRESENTED

1.      Is Theriault potentially a "subcontractor" as that term is used in exclusion

"j" of the Policy?

2.      Is MRC Holdings Inc. potentially an insured under the Policy?

## III.  ARGUMENT

**A.      There Are No Material Facts in Dispute.**

        It is undisputed that the Homer claim is for property damage resulting

from an "occurrence" within the 2001 policy period.  Homer's acceptance of a portion

of the Dock in February 2002 is also not in dispute.  Facts related to the terms of the

contract between Hurlen and Theriault are not disputed.  The underlying contract

specifications describing the work covered by the Theriault contract are also not

disputed.  Similarly, the facts related to the name change from Hurlen Construction

Company to MRC Holdings, Inc., are also not in dispute.  The terms of the Policy are

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

not in dispute.  Accordingly, the issues presented are appropriate for resolution by

summary judgment. O'Neill Investigations v. Illinois Employers of Wassau, 636 P.2d

1170, 1173 (Alaska 1981).

       **B.**     **Travelers Owed a Duty to Defend If There Was Potential Coverage**
                **for the Homer Claim**

        An insurer's duty to defend is broader than its duty to indemnify.  If there

was the "potential" Theriault could be considered a subcontractor as that term is used in

the Policy, Travelers had a duty to defend.  See, Fejas, supra, 984 P.2d at 522-525

(insurer has duty to defend insured against  claims for property damage to completed

work performed by subcontractor); Makarka v. Great American Ins. Co., 14 P.3d 964,

969 (Alaska 2000) (duty to defend may exist where "vagaries of fact and law" are

sufficient to create potential that insured will incur covered liability); Sauer v. Home

Indemnity Co., 841 P.2d 176, 180-182 (Alaska 1992) (facts potentially outside scope of

exclusion trigger duty to defend).   Similarly, if MRC Holdings Inc. was arguably an

insured, Travelers had a duty to defend. Evan v. Employers Mut. Liability Ins. Co. ,

391 F.Supp. 1230, 1232 (D. Ak. 1975).  The duty to defend is judged not solely by

allegations in the pleading, but based on facts known or reasonably discoverable by an

insured conducting a coverage investigation.  Continental Ins. Co. v. USF&G, 528 P.2d

430, 434-435 (Alaska 1974).  A breach of the duty to defend gives rise to a duty to

indemnify.  Afcan v. Mutual Fire, Marine & Inland Ins. Co., 595 P.2d 638, 646-647

(Alaska 1979).

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION       lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

**C.    Alaska Law Requires Undefined Terms to Be Interpreted in a Manner Most Favorable to The Insured.**

In the interpretation of insurance policies Alaska follows the "reasonable expectations of a lay insured" rule.  Allstate Insurance Co. v. Teel, 100 P.3d 2,6(Alaska 2004); Safety National v. Pacific Employers Insurance Co., 927 P.2d 748, 750 (Alaska 1996); State v. Underwriters at Lloyd's, 755 P2d 396, 400 (Alaska 1998); Fulton v. Lloyds of London Underwriting Cos., 903 P.2d 1062, 1068 (Alaska 1995).  In order to determine the reasonable expectations of the insured the court must examine:  1) the language of the disputed policy provisions; 2) the language of other policy provisions; 3) relevant extrinsic evidence; and 4) case law interpreting similar provisions.  Bering Straights Sch. Dist. v. RLI Insurance Co., 873 P.2d 1292, 1295 (Alaska 1994).  The insured's expectations regarding coverage must be objectively reasonable from the viewpoint of a hypothetical lay person.  West v. Umialik Ins. Co., 8 P.3d 1135, 1138 (Alaska 2000); C.P. v. Allstate Ins. Co., 996 P.2d 1216, 1222 (Alaska 2000) (coverage results if reasonably expected even if painstaking study of policy would have negated expectations).

Alaska recognizes that insurance agreement are adhesion contracts.  Graham v. Rockman, 504 P.2d at 1357.  Provisions of coverage are construed broadly, and exclusions are interpreted narrowly.  Bering Straits. supra, 873 P.2d at 1295; Hahn v. Alaska Title Guaranty Co., 557 P.2d 143, 145 (Alaska 1976).  Any ambiguities arising from the language of the policy are construed against the insurer.  Baugh-Belarde Const. Co. v. College Utilities Corp., 561 P.2d 1211, 1215, n. 7 (Alaska 1977).

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

D.    **The Plain Meaning of the Policy Language Supports Finding Theriault a Subcontractor.**

Webster's defines "subcontract" as "a contract that assigns some of the obligations of a prior contract to another party". Websters defines "subcontractor" as "one that enters into a subcontract and assumes some of the obligations of the primary contractor".[3] Under the standard dictionary definition of subcontractor, Theriault took a portion of Hurlen's obligations to Homer through a contract that assigned some of those obligations (fabrication and coating of the pile supporting the dock) to Theriault.

Blacks Law Dictionary defines "subcontractor" as "one who takes a portion of a contract from the principal contractor or another subcontractor" and as "one who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance". Here, Theriault took a portion of Hurlen's contract with Homer and entered into a contract with Hurlen to perform the fabrication and coating of dock piling that Hurlen had contracted with Homer to perform.

Clearly, the plain meaning of the word "subcontractor" from both a lay perspective and a "legalese" perspective, includes Theriault. Accordingly, it is reasonable for Hurlen to expect Theriault to be considered a subcontractor for purposes of the exception to the your work exclusion. Jarvis v. Aetna Cas. & Sur. Co., 633 P.2d 1359, 1363 (Alaska 1981) (terms of policy to be interpreted in ordinary and popular sense).

---

[3] Websters II New Riverside University Dictionary (1984 ed.) p.1153.

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

E.    **The Language of Other Policy Provisions Supports Finding Theriault a Subcontractor**

The definition of "your work" in the Policy includes, "work or operations performed by you or on your behalf <u>and</u> materials, parts or equipment furnished in connection with such work or operations". Exhibit 4, p. 15 [Section V (20)]. The inclusion of "materials" in the definition of "your work" is consistent with interpreting "subcontractor" to include a person whose contract with the insured requires labor ("work") to transform uncut, unwelded and uncoated lengths of steel pipe into specific dock piles ready for driving for a particular project, in accordance with detailed contract specifications.

F.    **Relevant Extrinsic Evidence Supports Finding Theriault a Subcontractor**

The extrinsic evidence the court should consider includes the Hurlen-Theriault contract, the plans and specifications relating to the work Theriault contracted to perform, the significance of the Theriault work to the functioning of the Dock, and the amount of Hurlen's contractual obligations to Homer included within the scope of the work Hurlen subcontracted to Theriault. As discussed above, a review of the terms of the Hurlen-Theriault contract shows that the agreement meets the ordinary definition of a subcontract. The plans and specifications establish that Theriault assumed responsibility to custom fabricate and coat all the dock piles that were critical components of the Dock. Theriault's processes, materials and techniques had to be approved in advance by Homer. Exhibit 24 (submittals); Exhibit 8, pp. 7-9; Exhibit 11, p. 4. Theriault clearly had to apply labor and expertise to the job rather than simply pull some piles from the shelf and send them to Homer. Affidavit of Grant Pool. Theriault's work totaled 22 percent of the value

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT

lf.bc.acc.pldgs.2005.1029.sjmemo.d

13

of Hurlen's contract. Exhibit 2, Exhibit 12. All of this extrinsic evidence favors finding
Theriault a subcontractor.

> **G.    Case Law Interpreting Similar Provisions Supports Finding Theriault
> a Subcontractor**

There are three on point cases. All hold that a supplier of custom fabricated
components of a construction project is a "subcontractor" for purposes of the subcontractor
exception to the "your work" exclusion.

In <u>National Union Fire Ins. Co. v. Structural Systems Technology</u>, 964 F.2d
759 (8th Cir. 1992), the 8th Circuit affirmed the lower court's decision in <u>National Union
Fire Ins. Co. v. Structural Systems Technology</u>, 756 F. Supp. 1232 (E.D. Missouri 1991),
*amended in* 764 F. Supp. 145. <u>National Fire</u> involved a 2,000 foot high tower that
collapsed. Structural Systems Technology ("SST") was hired as the general contractor.
SST in turn hired LeBanc & Royle Telecom to prefabricate the steel components of the
tower to specification and deliver these components. <u>Id</u>., 756 F. Supp. at 1236. After SST
constructed the tower, defects in the diagonal bars fabricated by LeBanc & Royle were
discovered. The tower collapsed while SST was repairing the defective diagonal bars.
Lawsuits ensued, including insurance coverage disputes.

Like Traveler's, here, SST's insurer claimed that the exclusion of coverage
for "your work" applied. The trial court framed the issue as "[w]ith respect to this
exclusion, the dilemma concerns whether or not LeBanc & Royle, the manufacturer and
supplier of the prefabricated steel rods in the tower, is considered a 'subcontractor', so as
to constitute an exception to this exclusion." <u>Id</u>., 756 F. Supp. at 1240. After noting that
the court is guided by the principles: (1) that plain language in a contract is given its plain

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION                    lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

meaning; (2) insurers bear the burden of proving the application of exclusions, and (3) clauses restricting insurance coverage are construed in favor of the insured.[4]  And, after looking to the Webster and Blacks dictionary definitions of subcontract and sub-contractor, the court held that the LeBanc & Royle was a subcontractor. Weighing in favor of this finding was the fact that LeBanc & Royle provided a major component of the tower and that those components were supposed to meet certain specifications.  Id..[5]

National Union is on all fours with the instant case.  The piling fabricated and coated by Theriault that supports the Homer dock is the functional equivalent of the steel rods fabricated by LeBanc and Royle that supported the tower.

The insured also prevailed in a dispute over the meaning of "subcontractor" as used in the exception to the "your work" exclusion in Wanzek Construction v Employers Ins., 679 N.W.2d 322 (Minn. 2004).  In Wanzek, the general contractor (Wanzek) agreed to build a swimming pool.  The contract required installation of "precast pool coping stones" meeting detailed specifications and manufactured by one of two companies. 679 N.W.2d at 324.  Wanzek then entered into a "Standard Purchase Agreement" with Aquatic Design, one of the designated manufacturers, for coping stones meeting specifications.  The agreement also required Aquatic Design to provide up to three days onsite supervision of the installation of the coping stones.  After the pool was opened

---

[4]These guiding principles are in accord with express Alaska law. See cases cited supra at p. 12.

[5] The trial court's subsequent amendment clarified that if, through further litigation, it is found that Structural Systems Technology was at fault and LeBanc & Royle was not at fault, then the coverage exclusion would apply.  National Union, 764 F. Supp. at 145.

MEMORANDUM IN SUPPORT OF MOTION                    lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

15

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

to the public, the coping stones cracked. Wanzek bore the costs of replacing the stones and made a claim to its insurer, Wausau. Wausau denied coverage under the "your work" exclusion.

As the Minnesota Supreme Court framed the issue, "[t]he question we must determine is whether Aquatic was a 'subcontractor' of Wanzek within the 'subcontractor' exception to the 'your work' exclusion." 679 N.W.2d at 328. Rejecting arguments made by both sides attempting to apply Minnesota precedents defining the term subcontractor in other contexts, the Minnesota Supreme Court found that the term "subcontractor" in Wausau's coverage exclusion was ambiguous[6]. Like Alaska, Minnesota requires an ambiguous insurance policy term to be construed liberally in favor of coverage. 679 N.W.2d at 329. The Wanzek court concluded that under the facts showing custom fabrication to specifications and the on-site services in connection with installation "the supplier meets the definition of subcontractor under the exception to the 'your work' exclusion." Id.

The only difference between the facts in this case and those in Wanzek are that Theriault did not provide on site supervision of pile installation. However, Wanzek did not indicate the presence of on site supervision to be dispositive or a "bright line" test. In fact, application of a "bright line" test when an undefined term is used in a policy would be contrary to the underlying principal followed in Wanzek of construing ambiguous terms in favor of the insured. If Traveler's wanted a "bright line" requiring a subcontractor to be

---

[6] Under Alaska law, a policy provision is "ambiguous" if the policy term at issue is subject to reasonable differing interpretations. O'Neil, supra, 636 P.2d at 1177.

MEMORANDUM IN SUPPORT OF MOTION                      lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

physically present on site, they could have included such a requirement in a policy definition of subcontractor.

The policy holder again prevailed in a dispute about the meaning of "subcontractor" as used in the exception to the "your work" exclusion in <u>Limbach Company, LLC v. Zurich American Ins. Co.</u>, 396 F.3d 358 (4th Cir. 2005). In <u>Limbach</u>, Limbach entered into a subcontract to install a pre-fabricated underground steam line. Limbach hired Thermacor to fabricate the pipe for the steam line. After the steam line was in place and tested a leak was discovered in the pipe. Limbach replaced the pipe and filed a claim with Zurich. Zurich denied coverage for most of Limbach's claim, including the part for the cost to replace the steam pipe. 396 F.3d at 361. Coverage litigation ensued. The District Court agreed with Zurich that the coverage exclusion for "your work" applied because the District Court found that Thermacor was a materialman. The District Court's decision apparently focused on two Miller Act cases which found "the fact that something might be custom built is not dispositive." 396 F.3d at 363.

On appeal, the 4th Circuit held Thermacor was a subcontractor. The Court focused on the importance of the steam pipe to Limbach's overall contract obligations, and on the fact that the steam pipe was custom manufactured in accordance with project specifications. <u>Id.</u> Thermacor also provided on site installation instructions, however, as in <u>Waznek</u>, an on site presence of the pipe fabricator was not deemed dispositive or a bright line test.

Like the pipe in <u>Limbach</u>, the coated pile fabricated by Theriault was an important component of Hurlens' contract with Homer. Like in <u>Limbach</u>, the pile was custom fabricated and custom coated to detailed project specifications. Like in <u>Limbach</u>,

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION                    lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

the "supplier" of a major component of the project should be deemed a "subcontractor" for insurance coverage purposes.

An inclusive definition of "subcontractor" was applied in a slightly different insurance context again in favor of the policy holder in Jacobsen Construction Co. v. Industrial Indemnity Co., 657 P.2d 1325 (Utah 1983). In Jacobsen, an insurer wished to subrogate against the company (Structo) that supplied tanks and accessories for a water purification plant. The insurer had waived subrogation against "subcontractors". The issue was whether the tank supplier was a subcontractor for purposes of the waiver of subrogation. The jury found that Structo was not Jacobsen's subcontractor. 657 P.2d at 1327.

The Utah Supreme Court reversed the jury's verdict holding that the trial court should have granted a directed verdict or a judgment notwithstanding verdict because Structo was Jacobsen's subcontractor as a matter of law. Id. The court found the fact that Structo's work was a substantial, essential, and significant part of Jacobsen's contract with the owner be dispositive. 657 P.2d at 1330. The court also relied on the fact that Structo's work had to meet detailed specifications. 657 P.2d at 1329-1330. In reaching this conclusion, the Utah court cited to a substantial number of cases from other jurisdictions holding that a company that performs work off site can be a subcontractor. 657 P.2d 1327-1330. The court also found it immaterial that Structo was hired by way of a purchase order. 657 P.2d at 1330.

Here, Theriault's work was a "significant" part of Hurlen's contract with Homer. The Homer dock could not be built without piles. And, as Homer claims in the underlying lawsuit, properly coated piles are essential to the performance and life

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION            lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

expectancy of the dock. That Theriault performed its work off-site does not automatically disqualify Theriault from "subcontractor" status under the Policy.

National Union, Limbach, Wanzek and Jacobsen all declined to import a definition of "subcontractor" in other legal contexts for use in interpreting "subcontractor" as used in a commercial general liability policy. But, they did examine how "subcontractor" had been defined or interpreted in other situations. Here too, applicable precedent favors Hurlen.

In Thorsheim v. State, 469 P.2d 383 (Alaska 1970), the Alaska Supreme Court interpreted "subcontractor" as used in Alaska's worker's compensation statutes. When interpreting the provisions of the statute making contractors responsible should their subcontractor's fail to carry required compensation insurance, the court defined "subcontractor" as "a person to whom a contractor sublets all or part of his initial undertaking". Theriault meets this definition.

The relevant Miller Act precedent is US v. Aetna Casualty & Surety Co., 981 F.2d 448 (9th Cir. 1992). (Sometimes cited as "Conveyor Rental"). Conveyor Rental identifies thirteen factors that the federal courts in the 9th Circuit use to identify subcontractors in the Miller Act context and five factors used to identify a "materialman" in the Miller Act context. Id. at 451– 452.

Of the thirteen factors favoring finding an entity a subcontractor for Miller Act purposes, Theriault meets seven. Exhibit 12, p. 1, Article 1 (progress payment), Article 2 (custom fabrication, labor, all pile for the project); Id., p. 2, Article 5; and Id., p. 3 [Appendix A], para. 6 (right to backcharge for deficient work). The materials did not come from inventory and were a substantial part of the Hurlen contract obligations. Exhibit 2,

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT

lf.bc.acc.pldgs.2005.1029.sjmemo.d

Exhibit 12, Affidavit of Grant Pool, para. 3.

None of the factors favoring a finding of a "materialman" for Miller Act purposes are present. The presence of a majority of Miller Act subcontractor factors and the absence of all Miller Act materialman factors favor finding Theriuault is a "subcontractor" for purposes of the exception to the "your work" exclusion.

Federal regulations impose certain equal employment opportunity requirements on "subcontractors." 41 CFR 60-1. Subcontract is defined as "any agreement or arrangement between a contractor and any person . . . under which any portion of the contractor's obligation under any one or more contracts is performed, undertaken or assumed." 41 CFR 60-1.3. Subcontractor is defined as "any person holding a subcontract." Id. Theriault meets this definition.

**H.    That Homer's Counterclaim Names "MRC Holdings Formerly Known as Hurlen Construction Company" Rather than Hurlen Construction Company Does Not Void Coverage or Release Travelers from its Duty to Defend**

In its denial letter Travelers indicated "it is unclear whether MRC Holdings, Inc. would qualify as an insured". Exhibit 23, p. 3. Such uncertainty as to coverage, of itself triggered Travelers' duty to defend the claim. Fejes, supra, 984 P.2d at 522; Makarka, supra, 14 P.3d at 969. That Hurlen simply changed its name to MRC Holdings, Inc. is obvious. The sale of Hurlen Construction Company to ACC required Hurlen to "transfer all right, title and interest in and to the name Hurlen Construction Company, necessitating a name change of the Corporation". Exhibit 22, p. 3. Accordingly, articles of amendment were filed and accepted. Id., pp.4-5. The section of the Policy identifying who is an insured, Exhibit 4, pp.8-9, does not address the impacts of a change of name. In the

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION                    lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

absence of express policy language excluding or voiding coverage when a company changes its name, Travelers should not be allowed to deny MRC Holdings, Inc. a defense of the Homer claim. Moreover, the Homer claim clearly arises out of work performed by Hurlen Contracting Company before Hurlen changed its name to MRC Holdings, Inc., effective June 7, 2002. Exhibit 2; Exhibit 22. The name change did not increase the degree of risk for property damage to previously completed operations of Hurlen insured by Travelers. MRC Holdings, Inc. was not a newly acquired entity and did not conduct any work related to the Homer claim. To allow Travelers to void coverage for operations completed by Hurlen because Hurlen sold the rights to use the name Hurlen Construction Company to ACC is the functional equivalent of denying coverage to a married person, sued under their current legal name, for an accident that took place while they were single. This creates a fortuitous windfall for the insurer not expected by a policyholder and not justified by any language in the policy.

## IV.    CONCLUSION

In denying a defense of the Homer claims based on the "your work" exclusion, Travelers is ignoring the commonly understood meaning of the word "subcontractor". Travelers attempts to add an additional unstated condition requiring the "subcontractor" to have "performed work on your behalf on site". This attempt to transform "subcontractor" into a restricted term of art breaches obligations owed to policyholders who faithfully paid the premium demanded by Travelers. Travelers' attempt to add an unrevealed restriction on coverage has been consistently rejected by courts considering nearly identical fact patterns and is contrary to principles of Alaska law governing the interpretation of insurance contracts. This Court should similarly reject

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

MEMORANDUM IN SUPPORT OF MOTION                    lf.bc.acc.pldgs.2005.1029.sjmemo.d
FOR PARTIAL SUMMARY JUDGMENT

Travelers' attempt to limit the scope of the undefined term "subcontractor" in a manner least favorable to its insured.  Partial summary judgment finding Travelers is required to provide a defense of the Homer claim to MRC Holdings, Inc. should be granted.

Dated this 7th day of November, 2005.

BOYD, CHANDLER & FALCONER, LLP

BY: _____
BROOKS W. CHANDLER
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that on November 7, 2005,
a true and correct copy of the above-referenced
document was hand delivered to:

David W. Pease, Esq.
Burr, Pease & Kurtz, PC
810 "N" Street
Anchorage, AK 99501

Clay A. Young Esq.
Delaney, Wiles, Hayes, et al
1007 W. Third Avenue; Suite 400
Anchorage, AK 99501

BY: _____
Lynn Harris Ford

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698

## TABLE OF EXHIBITS

1    Consent of Hurlen Directors and Shareholders re Asset Purchase Agreement and Name Change (6/1/02); Washington Secretary of State Certification of Amendment re Name Change (6/7/02)

2    Contract between City of Homer and Hurlen (4/10/01)

3    Travelers Contractors Coverage Part Declarations (6/1/01 - 6/1/02)

4    Travelers Commercial General Liability - Contractors Coverage Form

5    Travelers Deductible Liability Insurance

6    City of Homer Invitation to Bid, Contract Documents and Specifications (1/2001)

7    Construction Sequencing Drawing for Phase I and Phase II of dock construction

8    Contract Addendum No. 3 (2/22/01)

9    Bid Schedule (3/6/01)

10    Devoe Coatings spec sheet for DEVGRIP 238

11    City of Homer Standard Construction Specifications, 2000 Edition

12    Supply Agreement between Hurlen and Theriault (6/13/01)

13    City of Homer letter to Hurlen re substantial completion (2/4/02)

14    Hurlen Substantial Completion Calculation (2/4/02)

15    Complaint:  MRC v. City of Homer, 3AN-03-9770 CI  (7/24/03)

16    Answer/Counterclaim:  MRC v. City of Homer, 3AN-03-9770 CI  (8/14/03)

17    Answer/Second Amended Counterclaim:  MRC v. City of Homer, 3AN-03-9770 CI (12/17/04)

18    Routine Pretrial Order:  MRC v. City of Homer, 3AN-03-9770 CI  (3/9/05)

19    General Liability Notice of Occurrence of Claim (3/7/05)

20    Travelers letter to Hurlen confirming receipt of claim (3/10/05)

21    Travelers letter to Hurlen requesting notification if Hurlen is sued (4/4/05)

22    Hurlen letter to Travelers advising Hurlen and MRC are same company (4/19/05)

23    Travelers letter to Hurlen denying tender of defense and indemnity (5/27/05)

24    Hurlen Construction Co. Submittals (5/9/01)

BOYD, CHANDLER & FALCONER, LLP
ATTORNEYS AT LAW
825 WEST EIGHTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
TELECOPIER: (907) 274-3698